This case addresses the appeal of that certain *Order Granting Motion By Hawaiian Telcom, Inc. To Dismiss the First Amended Complaint In Its Entirety* (the "Dismissal Order") issued by the Bankruptcy Court.  The Dismissal Order was entered at ECF 67 of an adversary proceeding (Adv. Pro. Case No. 22-90008, the "Waimana AP") associated with the bankruptcy case of Paniolo Cable Company, LLC ("Paniolo"), Bankr. No. 18-01319 (the "Paniolo Bankruptcy").

## INTRODUCTION

Within the Paniolo Bankruptcy, assets formerly owned by Appellants' affiliate SIC had been executed and levied upon, and placed in a public auction, by the U.S. Marshal's Service in order to satisfy a $256m judgment owing from SIC to Paniolo.  The Court-appointed trustee was the winning bidder at this auction, and subsequently sold those assets it acquired from SIC, along with other assets it owned, to appellee Hawaiian Telcom, Inc. ("HTI") through an arm's-length, good-faith sale pursuant to Section 363 of the Bankruptcy Code.  While Appellants and SIC participated in both of those sale proceedings, they opted not to appeal the resulting sale orders, but instead to collaterally attack the sale orders after they were entered.  Appellants' first method of collateral attack was to use "self-help," including replacing locks on gates, barricading doors, or otherwise physically impeding HTI's access to the assets it had purchased.  Appellants' second method of collateral attack was to oppose the attempts by HTI to enforce the terms of the Bankruptcy Court's

sale orders by asserting that the sales were improperly conducted or failed to include certain assets.  No doubt anticipating that their efforts to collaterally attack the sale orders would not be well received by the court that entered those orders, Appellants opened a third front of collateral attack, outside of the Bankruptcy Court, by initially filing this action in Hawaii state court, asserting that HTI's use and occupation of the assets it had purchased in the bankruptcy sale constituted trespass or was otherwise illegal under Hawaii law.

HTI removed this action to the Bankruptcy Court, initiating the Waimana AP. The Bankruptcy Court, having already decided the issues in this action in connection with HTI's motion to enforce the sale order, deemed this action to be yet another impermissible attempt by Appellants to collaterally attack the Bankruptcy Court's prior orders.  Accordingly, after providing Appellants with an opportunity to amend their complaint, the Bankruptcy Court promptly dismissed the action.  Appellants have now sought to appeal the dismissal of their amended complaint.

## JURISDICTIONAL STATEMENT

The Bankruptcy Court had jurisdiction to enter the Dismissal Order under 28 U.S.C. § 1334(b).  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158.  The Dismissal Order was entered on August 18, 2022, and the resulting final judgment ("Judgment") was entered at ECF 71 of the Waimana AP on August 23, 2022.  Waimana Enterprises Inc. ("Waimana"), Clearcom, Inc. ("Clearcom") and Pa

Makani LLC ("Pa Makani") (collectively, "Appellants") jointly filed an appeal of the Dismissal Order and Judgment on August 30, 2022. Waimana AP, ECF 75, 76. Appellants' appeal of the Judgment is pending at Case No. 22-434.

## STATEMENT OF THE CASE

The litigation in the Waimana AP, including the resulting Dismissal Order and Judgment, is inextricably tied to disputes raised by Appellants (and Appellants' affiliates) in the Paniolo Bankruptcy case. The Bankruptcy Court's rulings in connection with those disputes have similarly been appealed to this Court at Case Nos. 22-426, 22-427, and 22-428.[1] Accordingly, Appellee HTI incorporates by reference the statements of the case it provided in its simultaneously filed opposition briefs at Case No. 22-426, ECF 35 and Case No. 22-427, ECF 23.[2]

HTI supplements this referenced statement with the factual and procedural history of the Waimana AP, as follows:

On March 18, 2022,[3] SIC and Waimana jointly filed a complaint (the "Complaint") against HTI in the Circuit Court of the First Circuit in the State of Hawaii (the "State Court") at Case No. 1CCV-22-0000321. On April 4, HTI removed the action to the Bankruptcy Court, initiating the Waimana AP. *See*

---

[1] A consolidated summary timeline of the factual and procedural history underlying all six Paniolo Bankruptcy appeals pending in this Court has been attached hereto as **Exhibit A**.

[2] All capitalized terms used but not defined herein hold the meanings ascribed to them in the referenced statements.

[3] In connection with the Paniolo Bankruptcy, this was several months after the Initial Enforcement Order had been entered, but shortly prior to the filing of the Main Motion to Enforce.

Waimana AP, ECF 1-3.  A motion to dismiss the Complaint was filed by HTI on April 11, 2022 (Waimana AP, ECF 6, the "Initial Motion to Dismiss"), and both SIC and Waimana filed oppositions thereto (Waimana AP, ECF 13, 15).  The Bankruptcy Court issued a tentative ruling on the Initial Motion to Dismiss prior to oral argument, in which it stated that it was "inclined to grant" the Initial Motion to Dismiss "subject to oral argument and further reflection."  Waimana AP, ECF 22.  After oral argument concluded on May 20, 2022 (Waimana AP, ECF 23), the Bankruptcy Court adopted its earlier tentative ruling, subject to two changes: footnote 1 of its tentative ruling would be deleted, and Waimana would be granted the opportunity to amend the Complaint.  Tr. Hr'g (May 20, 2022): 8:20 – 9:16.  The Bankruptcy Court's order denying the Initial Motion to Dismiss was entered on March 31, 2022.  Waimana AP, ECF 31.

On May 27, 2022, Appellants filed their *First Amended Complaint* (Waimana AP, ECF 28, the "First Amended Complaint").  The First Amended Complaint removed SIC, but added two new plaintiffs:  Clearcom and Pa Makani.  Waimana AP, ECF 28.  The First Amended Complaint contained five causes of action: (1) trespass, asserting that HTI had trespassed into Appellants' exclusive right to use and occupy areas covered by License 372 (*see id.* ¶ 49); (2) conversion, asserting that HTI had willfully used Appellants' License 372 easement areas and the service rights thereunder (*see id.* ¶¶ 53-54); (3) unfair competition, asserting that HTI had

engaged in unfair competition by usurping Appellant's License 372 rights (*see id.* ¶ 58); (4) intentional interference of contract, asserting that HTI had induced the DHHL to breach its obligations to Appellants under License 372 by granting HTI a limited right of entry onto the Hawaiian Home Lands and negotiating a new license with HTI (*id.* ¶ 64); and (5) declaratory relief, seeking a determination that (a) the Trustee did not obtain SIC's interest in License 372 through the Marshal Sale; (b) HTI could not enforce the Settlement Agreement against Appellants; (c) the SIC Partial Assignment only covered "voice only services," and (d) the SIC Partial Assignment did not include the "License 372 Easement areas." *Id.* ¶¶ 66-68.

HTI moved to dismiss the First Amended Complaint on June 10, 2022 (Waimana AP, ECF 35, the "Motion to Dismiss") under Federal Rule of Civil Procedure 12(b)(6), asserting that the First Amended Complaint failed to articulate claims to relief that were facially plausible or legally cognizable. After full briefing, the Bankruptcy Court issued another tentative ruling: it was "inclined to dismiss [Appellant's] claims with prejudice." Waimana AP, ECF 51. After oral argument concluded on August 1, 2022 (Waimana AP, ECF 60), the Bankruptcy Court granted HTI's Motion to Dismiss on the following grounds:

> The way I look at this complaint is that if my final enforcement order is correct, which I think it is . . . none of the counts in this complaint can stand, and that's another way for me to determine that issue preclusion applies.
>
> In other words, the final order decides issues, which make the claims in

this complaint non-viable . . . I won't try to restate those -- the words of that order. It says what it say[s]. But I think that under that order, HTI is doing what it's entitled to do, therefore, none of the counts in this complaint can stand.

Therefore, under the doctrine of issue preclusion, I will dismiss all the counts of this complaint with prejudice, because I think they're legally non-viable and . . . allowing a further amendment would be futile. Allowing discovery, I think would be equally futile because there's a fundamental legal flaw.

Tr. Hr'g (August 1, 2022) at 20:13 – 21:7.

The Bankruptcy Court subsequently entered the Dismissal Order on August 18, 2022, and the resulting Judgment on August 23, 2022.  Waimana AP, ECF 67, 71.

## STANDARD OF REVIEW

A dismissal for failure to state a claim is reviewed *de novo*.  *Stone v. Travelers Corp.,* 58 F.3d 434, 436 (9th Cir. 1995).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The tenet that a court must accept as true all of the allegations contained in a complaint, however, is "inapplicable to legal conclusions."  *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

## SUMMARY OF ARGUMENT

Appellants do not allege that any errors actually occurred in the Bankruptcy Court's adjudication of the Waimana AP and the dismissal of the First Amended

Complaint.   Instead, the crux of Appellants' argument on appeal is that the Bankruptcy Court committed error when it issued the Final Enforcement Order and the Reconsideration Order in the Paniolo Bankruptcy – and thus they have appealed the Dismissal Order, since it "relied on" the Bankruptcy Court's determinations that were made in the Final Enforcement Order.  *See* Opening Br. at 4.  Appellants and their affiliates, however, have already appealed the Final Enforcement Order and sought relief in connection therewith.  Just as they were not permitted to relitigate the Final Enforcement Order through the First Amended Complaint, Appellants are not permitted to use this appeal of the Dismissal Order as a further challenge to the Final Enforcement Order or the underlying Sales Orders.  Accordingly, as the Court should affirm the Final Enforcement Order, it should also affirm the corresponding Dismissal Order.

## ARGUMENT

**A.   The Bankruptcy Court did not commit any error in determining that Appellants' causes of action were barred by issue preclusion.**

The Bankruptcy Court's decision to issue the Dismissal Order was made on the basis of issue preclusion.  Tr. Hr'g (August 1, 2020) at 20:19-20 ("…[T]he "[F]inal [Enforcement] [O]rder decides issues, which make the claims in this complaint non-viable.")  The doctrine of issue preclusion "prevents relitigation of all issues of fact or law that were actually litigated and necessarily decided" in a

prior proceeding. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988).

Within the Ninth Circuit, issue preclusion applies where:

(1) the issue at stake was identical in both proceedings;
(2) the issue was actually litigated and decided in the prior proceedings;
(3) there was a full and fair opportunity to litigate the issue; and
(4) the issue was necessary to decide the merits.

*Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), *as amended* (May 3, 2012).

Issue preclusion only applies against a party who "was a party or [was] in privity with a party at the first proceeding." *Indus. Pro. & Tech. Workers Int'l Union, SIUNA AFL-CIO v. Worldtec Grp. Int'l,* 25 F. App'x 525, 527 (9th Cir. 2001).[4]  As shown below, each of the necessary elements for issue preclusion were met here.

          *i.*       *There is an identity of claims between the two disputes.*

For the first element, which requires an "identity of claims," the Ninth Circuit applies four criteria in its assessment: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (fourth factor is "most important").

---

[4] Issue preclusion is applicable even if appeals are currently pending on the judgment. *Robi v. Five Platters, Inc.,* 838 F.2d 318, 327 (9th Cir. 1988) (citing, *inter alia,* 18 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 4433, at 305 ("[I]n federal courts . . . the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided.")).

This first element has been satisfied, as the relief sought in the First Amended Complaint hinges almost entirely on the determination – which the Bankruptcy Court confirmed at ¶ G of the Final Enforcement Order – that SIC's interest in License 372 had been acquired by the Trustee through the Marshal Sale and was subsequently sold to HTI through the 363 Sale.  If HTI owns SIC's interest in License 372, HTI could not reasonably be found to have trespassed on areas covered by SIC's interest in License 372 (the first cause of action); converted the service rights under License 372 (the second cause of action); usurped Appellants' rights under License 372 (the third cause of action); or damaged Appellants' business on the Hawaiian Home Lands through its negotiations with the DHHL regarding a limited right of entry that overlaps with the scope of SIC's interest in License 372 (the fourth cause of action).  The fifth cause of action, seeking declaratory relief, *inter alia,* to establish that the Trustee "did not obtain SIC's interest in License Agreement No. 372" (*see* Opening Br. ¶ 66) is also largely mooted.

The "Statement of Issues Presented" in this case, as compared to the Statements filed in each of the three pending appeals by the SIC Parties of the Final Enforcement Order, clearly evidences the overlap in both proceedings.  The issues listed in the present Statement are either identical, or substantively identical, to issues raised in the latter Statements, and all of them touch upon whether SIC's

interest in License 372 had been rightfully transferred to HTI.[5]   Appellants have effectively conceded that the two proceedings have an identity of claims.  *See, e.g.,* Opening Br. at 11 ("However, as demonstrated in Waimana's HI-22-01176 Opening Brief, the [Bankruptcy] Court incorrectly rejected the argument that based on Rule 9019 Settlement Agreement, the Trustee did not obtain License 372 in the Marshal Salle [sic] and did not transfer License 372 to HTI in the 363 Sale.").

          *ii.    HTI's purchase of SIC's interest in License 372 was actually litigated.*

HTI's acquisition of SIC's interest in License 372 was actually litigated, and decided, both at the time the 363 Sale Order was entered and then subsequently in connection with the Main Motion to Enforce.   The SIC Parties "actively participated" in the litigation that led to the 363 Sale Order and the Final Enforcement Order by filing pleadings and attending hearings.[6]   *See In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983).   The Final Enforcement Order definitively provides, in ¶ G, that HTI had "properly acquired the assets that permit operation of the Paniolo Network, including . . . those certain portions of the 372 License pertaining to the Paniolo network and/or the Paniolo Premises that were

---

[5] The only exceptions in the present Statement appear to be Issues D and E, tied to Appellants' declaratory relief request, which still arises out of the dispute over SIC's interest in License 372.

[6] SIC had also actively participated in both the Marshal Sale and the 363 Sale proceedings through the filing of objections and oral argument.  Appellants also filed an informal objection to the Marshal Sale.

formerly held by SIC."  Much of the relief granted in the Final Enforcement Order was tied to this specific finding: having determined that HTI acquired SIC's former interest in License 372, the SIC Parties could not "tamper[] with any of HTI's locks, chains, and other security apparatus pertaining to the Paniolo Network," impede "in any way HTI's access . . . to the Paniolo Network", or allege that HTI had trespassed on areas covered by SIC's interest in License 372.  *See* Final Enforcement Order § 3 (internal quotations omitted).

### iii.   *Appellants had a full and fair opportunity to litigate.*

In order to ensure that the opportunity to litigate was "full and fair," a court is required to first compare the procedures in the prior and subsequent matters, and then consider the parties' incentives to litigate in the two actions.  *Maciel v. Comm'r*, 489 F.3d 1018, 1023 (9th Cir. 2007).  In connection with the Sales, the SIC Parties each received notice of the Sales, and had in fact objected to the entry of the Sale Orders.  Each of the SIC Parties also had full and fair opportunity to appeal those orders, but chose not to do so.  Instead, the SIC Parties opted to impede HTI's access to the assets it purchased.  This forced HTI to pursue its Initial Motion to Enforce and its Main Motion to Enforce.  The SIC Parties filed pleadings objecting to the Main Motion to Enforce, appeared at the hearing, and were given the opportunity to present oral argument before the Final Enforcement Order was entered. Given the detailed relief sought by HTI through the Main Motion to Enforce, the SIC Parties

had every incentive to litigate – and did in fact litigate – in those actions to the fullest.[7]  Waimana even sought reconsideration of the Final Enforcement Order, which resulted in further briefing and argument on the merits.[8]

iv.    *The transfer of SIC's interest in License 372 through the Sales was necessarily decided.*

The transfer of SIC's interest in License 372 to HTI was central to the decision, and was necessarily determined, in connection with the Main Motion to Enforce.  As discussed above, the relief granted to HTI in the Final Enforcement Order was largely tied to the finding that SIC's interest in License 372, along with other assets, had been properly acquired by the Trustee through the Marshal Sale Order, and then by HTI through the 363 Sale Order.

---

[7] There is also nothing which suggests that the resolution of the issue through a contested matter afforded Appellants any less due process than if the issue had been resolved through an adversary proceeding.  *See, e.g., In re WorldCorp, Inc.,* 252 B.R. 890, 895 (Bankr. D. Del. 2000) ("[W]e conclude that an adversary proceeding is not necessary where the relief sought is the enforcement of an order previously obtained."); *In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*, 471 B.R. 331, 337 (Bankr. S.D.N.Y. 2012) ("The Motion need not have been brought as an adversary proceeding since [the movant] seeks only the enforcement of an injunction already in effect under this Court's existing Sale Order..."). *Accord In re Kalikow*, 602 F.3d 82, 93 (2d Cir. 2010); *In re Lazy Days' RV Ctr. Inc.,* 724 F.3d 418, 426 (3d Cir. 2013).

[8] While Appellants assert that there were "questions of fact on this issue that required an evidentiary hearing" and they were entitled to "discovery and a trial" (Opening Br. at 11, 16), Appellants never sought an evidentiary hearing in connection with the Main Motion to Enforce or the underlying Sales, despite having ample opportunity to make such a request. The fact that no evidentiary hearing occurred when no party requested it, did not render the Bankruptcy Court's decision invalid or ineffective for preclusion. *See Dodd v. Hood River Cnty.*, 136 F.3d 1219, 1227 (9th Cir. 1998) (the parties' own failure to request a full evidentiary hearing did not enable them to now avoid the operation of the issue preclusion.").

v.      *The privity requirement is satisfied.*

The final requirement for issue preclusion, privity, is satisfied so long as the party being estopped had a "sufficient interest and participated in the prior action," or was "so closely aligned" with a participating party that the participant could be deemed its "virtual representative." *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980).  *See also In re Gottheiner,* 703 F.2d 1136, 1140 (9th Cir. 1983) ("Privity exists when there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest.")  Here, two of the three Appellants, Waimana and Clearcom, participated firsthand in the Main Motion to Enforce litigation.[9]  The remaining Appellant, Pa Makani, is a wholly-owned subsidiary of Waimana – just like SIC and Clearcom.  *See* Opening Br. at i (Corp. Disc. Statement).  The three Appellants are represented in this appeal, as they were in the Waimana AP, by the same attorney who represented Waimana in connection with the Main Motion to Enforce.  The four affiliates – SIC, Waimana, Clearcom, and Pa Makani – share far more than "an abstract interest," it is clear that they "maintained the same [legal and factual] position" in the Bankruptcy Court and the Waimana AP in challenging the transfer of SIC's interest in License 372.  *United States v. ITT Rayonier*, 627 F.2d at 1003.  Any notion of "variance" between the parties is insubstantial.  *Id.*

---

[9] All three Appellants also jointly filed an informal objection to the Marshal Sale.

## B.    Appellants' causes of action fail under Rule 12(b)(6).

This Court may affirm the Bankruptcy Court's dismissal order on "any basis fairly supported by the record," not just the ones the Bankruptcy Court discussed in its ruling. *See Flores v. San Diego Cnty.*, 206 F.3d 845, 847 (9th Cir. 2000); *Papa v. United States,* 281 F.3d 1004, 1009 (9th Cir. 2002). The Bankruptcy Court's dismissal based on issue preclusion is amply supported by the case law and evidence in the record, and should therefore be affirmed on those grounds.   Additionally, dismissal was also warranted, and should be affirmed, because Appellants have never stated facially plausible claims for relief.

*i.    The first three causes of action in the First Amended Complaint fail to state a claim in light of the prior Sale Orders and the Final Enforcement Order.*

The first cause of action in the First Amended Complaint, asserting trespass by HTI on Appellant's License 372 Easement (defined below) did not state a plausible claim for relief, because HTI's ownership of SIC's interest in License 372 provided it with the ability to occupy the alleged easement areas tied to the Paniolo Network.   The second cause of action, asserting that HTI converted Appellants' License 372 Easement similarly fail, as HTI's purchase provided it the right to use SIC's interest in License 372 that it acquired through the 363 Sale.   The same applies for the third cause of action – HTI could not be found to have unfairly "usurped" any License 372 rights through its arm's-length, good faith purchase of SIC's

interests through a bankruptcy sale. Accordingly, if the Court affirms the Bankruptcy Court's Final Enforcement Order establishing that HTI purchased SIC's interest in License 372, dismissal of these claims is warranted.

      ii.     *The fourth cause of action lacks a cognizable legal theory.*

Count IV of the First Amended Complaint alleges tortious interference by HTI, in that HTI allegedly "induced DHHL to breach th[e] [License 372] agreements with [Appellants] . . . [and] encouraged and induced DHHL to breach its obligations to [Appellants] under License 372 by entering into the Limited Right-of-Entry, making filings in this Court and potentially negotiating a new license with HTI." First Am. Compl. ¶ 64.  These alleged breaches, however, are not described in the First Amended Complaint.

Under Hawaii law, to establish a cause of action against a third party for intentional interference with a contractual right, it "must be shown that the third party acted with intent and legal malice, i.e., the intentional doing of a harmful act without legal or social justification or excuse..." *Ace Quality Farm Prod., LLC v. Hanh*, 136 Haw. 373, 362 P.3d 806 (Ct. App. 2015).[10]  HTI's act of filing for its own right-of-entry or license is in no way a harmful, malicious, or wrongful act, nor an "improper objective."  Appellants have also not alleged any damages incurred,

---

[10] *See also Meridian Mortg., Inc. v. First Hawaiian Bank,* 109 Haw. 35, 48, 122 P.3d 1133, 1146 (Ct. App. 2005), as corrected (Oct. 13, 2005) (it must be shown that the defendant "either pursued an improper objective of harming the plaintiff or used wrongful means that caused injury in fact").

despite that the First Amended Complaint quotes the requirement that the damages suffered cannot be "speculative or conjectural losses." *See* First Am. Compl. ¶¶ 63-64; *Ace Quality*, 109 Haw. at 44. Certainly, if the Court affirms the Final Enforcement Order's finding that HTI purchased SIC's interest in License 372, then Appellants could not have suffered any damage by HTI's filing for an overlapping right-of-entry or a license in its own name.

Even if the claim had been properly articulated, it rests on Appellants' misguided notion that License 372 is an exclusive license.[11] The SIC Parties have alleged that License 372 grants them exclusive possessory rights to certain "premises" they developed with DHHL's approval under License 372. Opening Br. at 15. Under this novel theory, the SIC Parties have divided License 372 into two portions: a right to provide telecommunications services (the "Service Right"), and an easement granted by the DHHL to operate such Service Right (the alleged, and allegedly exclusive, "License 372 Easement"). First Am. Compl. ¶ 20, n. 1. Appellants have admitted that the Service Right is no longer exclusive in light of the Federal Communications Commission (the "FCC")'s June 30, 2017 Memorandum Opinion and Order (the "FCC Preemption Order"), *see id.* ¶ 44, but maintain that the License 372 Easement is exclusive under the terms of License 372. *Id.* ¶¶ 44, 45;

---

[11] Appellants appear to be at sea as to whether exclusivity is tied to Waimana, "Waimana and its assignees," Appellants, or "the SIC Parties." Opening Br. at 3, 14, 15.

*see also* Opening Br. at 3, 14, 15.  This strained division of License 372, however, is entirely inconsistent with the actual language of the license and its operation. Based on the plain language of License 372, the language cited by Appellants as establishing the License 372 Easement (*see* First Am. Compl. ¶ 20)[12] is a mere right of entry over DHHL land to and from the "line and appurtenances" that are actually constructed, not an independent grant of an exclusive easement.  If Appellants' interpretation were correct, then the "right of entry upon the easement area and adjoining land," would give Waimana an exclusive (i.e. the exclusive right to use and occupy) easement over all of the Hawaiian Home Lands.  That cannot be what the DHHL intended.[13]

Appellants then state that "License 372 granted SIC Parties possessory rights to areas of HHL that they developed with DHHL's approval."  Opening Br. at 15. Appellants' underlying premise is correct, as the DHHL granted to SIC specific easements when SIC obtained the DHHL's approval to build certain Paniolo

---

[12] License 372 granted to Waimana the following: "the **exclusive right and privilege to build**, construct, repair, maintain and operate a broad band telecommunications network, including poles . . . . over, across, under and throughout all lands under the administration and jurisdiction of [the DHHL], including the right to trim, **and including also the right of entry upon the easement area and adjoining land** of [the DHHL] for the construction, maintenance, operation and removal of [Waimana's] **line and appurtenances** over, across and under the LICENSE area."  First Am. Compl., Exh. 1 (emphasis added).

[13] Further, Appellants' interpretation makes no sense upon a full reading of License 372.  A detailed analysis of the language of License 372 was made by HTI in its opposition brief in support of the Motion to Dismiss, and is incorporated by reference herein: HTI refers the Court to Waimana AP, ECF 35-1 at 9-10.

Network facilities.  It is undisputed, however, that SIC – not Waimana, Pa Makani, or Clearcom – obtained those approvals of the construction plans for the buildings and premises tied to the Paniolo Network from the DHHL.  The possessory rights and easements that were specifically tied to the Paniolo Network were thus sold through the Sales as part of SIC's interest in License 372.

Further, the SIC Partial Assignment itself does not contain this purported division between a "Service Right" assigned to SIC, and an "Easement" retained by Waimana – nor any other reservation of rights by Waimana. *See* First Am. Compl., Exh. B.  To the contrary, the SIC Partial Assignment transferred to SIC all of the "rights, title and interest" necessary to provide certain telecommunications services. *Id.*

Notably, Waimana and SIC previously raised this exact argument of a purported division of the Service Right from the License 372 Easement, to the FCC – and the FCC squarely rejected it.  The FCC Preemption Order states:

> Sandwich Isles argues that the Exclusive License does not violate Section 253(a) because it grants exclusivity only as to the construction of telecommunications 'infrastructure' and therefore does not preclude competitors from providing 'service' to the Hawaiian home lands. We reject this argument . . . On its face, the Exclusive License binds DHHL to prohibit the construction or operation of a telecommunications network by any entity other than Sandwich Isles for the provision of telecommunications services on the Hawaiian home lands . . . Waimana also suggests that the Exclusive License does not prohibit competition because other telecommunications carriers could lease access to elements of Sandwich Isles' network . . . [But] under Commission precedent, Section 253(a) bars State or local requirements that prevent

competitors from 'utiliz[ing] their own facilities to provide service'."

First Am. Compl., Exh. I (FCC Preemption Order) ¶¶ 15-18.[14]

Without the alleged exclusivity asserted by Appellants, there could not have

been a breach by the DHHL of License 372 when it issued to HTI a separate right of

entry, and without a breach, there cannot have been any intentional interference by

HTI with License 372.  Count IV therefore lacks any cognizable legal theory, and

was properly dismissed.

> iii.    *The request for declaratory relief was properly dismissed.*

Appellants' fifth cause of action seeks declaratory relief on four related items:

(1) a determination that SIC's interest was not transferred to the Trustee through the

Marshal Sale, (2) a determination that HTI may not enforce the terms of the

Settlement Agreement against Appellants, (3) a determination that SIC's interest in

License 372 provided SIC only with "voice only services" on the HHL, and (4) a

determination that SIC's interest in License 372 did not include Appellants' License

372 Easement.  *Id.* at ¶¶ 66-68.

The Ninth Circuit has indicated that seeking declaratory relief to review or

challenge a prior court decision is not a "proper use of the declaratory judgment

---

[14] Appellants have asserted this same argument in a suit against the DHHL.  In that action, the Circuit Court of the First Circuit in the State of Hawaii has held that License 372 does not grant Appellants any "possessory or ownership rights" over any of the HHL.  The Circuit Court also found that since Appellants had already litigated License 372's exclusivity provisions in prior FCC proceedings, Appellants were precluded from relitigating those issues.  *See* Case No. 1CCV-22-0000617, ECF 75 at ¶¶ 8,12, 23-26.  Appellants' appeal of this decision is presently being briefed.

procedure." *Fireman's Fund Ins. Co. v. Ignacio*, 860 F.2d 353, 355 (9th Cir. 1988). Even when examined on the merits, however, each of the requested determinations sought by Appellants was properly dismissed under Rule 12(b)(6). The first determination is undisputedly precluded by the Final Enforcement Order, which holds otherwise. The second determination was also mooted by the Final Enforcement Order, as well as the Settlement AP: HTI had been utilizing the assets it acquired through the 363 Sale, including SIC's interest in License 372, to access and operate the Paniolo Network – HTI was not seeking to enforce any terms of the Settlement Agreement against Appellants.

Appellants' third requested declaratory finding seeks a determination that the SIC Partial Assignment only provided SIC with the ability to provide "voice only" service on the HHL. First Am. Compl. ¶ 67. Appellants have not alleged a plausible claim for relief in connection with this request; their allegations on which this claim is based are falsely concocted, illogical, and rely on a fundamental mischaracterization of the Paniolo Network that was sold to HTI through the Sales.

At its core, this request for declaratory relief attempts to introduce a post-sale, dead-hand restriction on an asset that was purchased by HTI free and clear pursuant to Section 363 of the Bankruptcy Code – SIC's interest in License 372. In the First Amended Complaint, Appellants have incorrectly and misleadingly conflated the services provided on the Paniolo Network, with the services provided by SIC to

consumers.   First,   Appellants   allege   that   SIC   (not   Paniolo)   deployed "**telecommunications** facilities, including Central Offices . . . and underground conduits," and then "used those facilities for the provision of voice only services" on the HHL.  First Am. Compl. ¶ 21 (emphasis added).  Appellants then assert that HTI wrongfully used the SIC Partial Assignment by going beyond the "voice only services" SIC provided.  *Id., e.g.,* ¶ 54.  This allegation, however, is a fundamentally incorrect portrayal of how the Paniolo Network operates – and how it previously operated even before HTI purchased the network.  As a "middle-mile" provider of connectivity to third party carriers, the Paniolo Network has always carried transmissions of all types to and from points where its network connects to networks of its carrier customers.  The Paniolo Network has never provided retail voice, data, or wireless services directly to consumers; it only provides wholesale transport services to "last-mile" carriers, such as SIC, who in turn provide voice, data, or wireless services to those consumers. [15]   These telecommunications service arrangements have not materially changed from the day Paniolo first connected to (what were formerly) SIC's facilities on the HHL to the present day, and have never been constrained by the types of services SIC (or any other "last-mile" provider) chooses provide to consumers.  Appellants' last-ditch attempt to impair the assets

---

[15] "Last-mile" carriers (like SIC) also regularly use "middle-mile" networks (like Paniolo) in order to reach other "last-mile" networks on other ends.

fairly purchased by HTI, through imposing an illogical last-mile "voice only" limitation on the Paniolo Network, is simply a red herring.[16]

In any event, Appellants' attempt to construct this new dead-hand limitation on the SIC Partial Assignment is once again contradicted by the express terms of the governing documents. By a plain reading of the SIC Partial Assignment, no such limitation to "voice only services" exists. First Am. Compl., Exh. B. The SIC Partial Assignment transfers to SIC, under License 372, the right, title, and interest necessary to provide "IntraLata and Intrastate telecommunication services." *Id.* The FCC has long held, as a matter of law, that the term "telecommunication services" is not limited to "voice only services."[17]

---

[16] The First Amended Complaint alleges that the SIC Partial Assignment is expressly limited to "IntraLata and Intrastate telecommunication services," which they believe means "limited to local, intrastate, interstate and international telephone" on HHL. First Am. Compl. ¶ 16. But Appellants do not cite a source for their quoted definition of "IntraLata and Intrastate telecommunication services." *See id.* It appears to be selectively excerpted from License 372, which states that "LICENSOR determines that the LICENSE established herein is essential in order to provide broad band telecommunication services of all types (including but not limited to local, intrastate, interstate and international telephone; video on demand..." *Id.*, Exh. 1. Appellants have taken the broad, general grant to Waimana ("**including but not limited to**") under License 372 and have falsely – and deceptively – reduced it ("**limited to**") to support their position.

There also exists a nonsensical inconsistency in Appellants' allegations: if the SIC Partial Assignment covers "IntraLata and Intrastate telecommunication services," the interpretation of "IntraLata and IntraState" to cover "interstate" and "international," cannot be correct. *See* First Am. Compl. ¶ 16; *see, e.g., SBC Communications v. FCC*, 138 F.3d 410, 412 n.1 (D.C. Cir. 1998) ("**Inter**LATA service refers to what consumers know as long-distance service; **intra**LATA to what they know as local service.") (emphasis added).

[17] Telecommunications is defined as "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." 47 U.S.C. § 153(50). The statute does not limit telecommunications to voice traffic. The FCC considers the following services telecommunications: wireless telephony, including cellular and personal communications services; paging; dispatch and operator services; mobile radio services; access to interexchange

Appellants seek a fourth and final determination that the SIC Partial Assignment "did not include License 372 Easement areas."  First Am. Compl. ¶ 68. This request is a modified version of the flawed argument that the (non-exclusive) Service Rights can be severed from the (allegedly exclusive) License 372 Easement. Appellants continue to contend that only the Service Right was transferred through the SIC Partial Assignment, notwithstanding the plain language of the SIC Partial Assignment to the contrary, and the FCC Preemption Order refuting this possibility. This request for declaratory relief lacks supportable legal grounds, and was properly dismissed.

### C.    Appellants' arguments challenging the Final Enforcement Order are properly addressed in their appeals of that order.

Appellants also assert in this appeal that the First Amended Complaint was improperly dismissed because the Final Enforcement Order was improperly entered. These arguments, described below, are addressed in the separate appeals relating to the Final Enforcement Order and do not need to be restated here.

---

service; business data services; wide area telecommunications services; toll-free and 900 services; message telephone services; private line; telex; telegraph; satellite services; resale services; Frame Relay; asynchronous transfer mode; Multi-Protocol Label Switching; audio bridging; and interconnected VoIP. 2022 Telecommunications Reporting Worksheet Instructions (FCC Form 499-A) (approved by OMB Oct. 2021); *see also Business Data Services in an Internet Protocol Environment*, 32 F.C.C.R. 3459, 3575 n. 700 (2017) (certain data transmission services qualify as "telecommunications services when" offered on common carrier basis); *Appropriate Framework for Broadband Access to the Internet Over Wireline Facilities*, 20 F.C.C.R. 14853, 14909-10 ¶¶ 103 (2005) (same applies to the "transmission component" of broadband Internet access).

Appellants primary argument appears to be that the Bankruptcy Court's findings in the Final Enforcement Order are "inconsistent with the Rule 9019 Settlement Agreement" and the MRA.  Opening Br. at 5, 11.  This is the same argument SIC and Waimana have raised in their appeals of the Final Enforcement Order.  HTI has addressed these arguments in its opposition briefs in those appeals, and incorporates them by reference herein: HTI refers the Court to Case No. 22-426, ECF 35 at 18-19 and Case No. 22-427, ECF 23 at 20-21.

Appellants also note that there were "questions of fact" that required an evidentiary hearing and assert that they were entitled to "discovery and a trial" in connection with the Settlement Agreement and MRA.  Opening Br. at 4, 11, 16.  Waimana has raised this issue in connection with its appeal of the Final Enforcement Order, and thus HTI refers the Court to its arguments in opposition to this issue at Case No. 22-427, ECF 23 at 7-16, and incorporates those arguments by reference herein.

Appellants also briefly raise the argument that they were allegedly barred from objecting to the 363 Sale Order under the terms of the Settlement Agreement.  This argument was also raised by Waimana in its appeal of the Final Enforcement Order.  HTI thus incorporates its response to that argument by reference herein:  HTI refers the Court to Case No. 22-427, ECF 23 (*id.*) at 17-19.

Finally, Appellants raise the argument that the Bankruptcy Court "never addressed" a particular issue, reflected in footnote 1 of its tentative ruling in connection with the <u>Initial</u> Motion to Dismiss.  Opening Br. at 7; *see also id.* at 16 (asserting that the Bankruptcy Court "did not make any determination that Appellants do not own the rights to wireless and broadband or that SIC's only has rights in connection with telephone telecommunications as clearly set forth in the assignments that were approved by DHHL.")  It is unclear whether Appellants believe this to be an error warranting reversal, but if so, such argument is without merit.  The Bankruptcy Court noted that footnote 1 "was probably not necessary to [its] decision," (*see* Tr. Hr'g (May 20, 2022) at 9:6-9), and thus removed it from its final ruling in connection with the Initial Motion to Dismiss.  A court is not required to substantively address every single issue raised in a dispute if the adjudication of such issue is not required for the court to reach its determination.  As shown above, this particular question, which relates only to Appellants' third request for declaratory relief, did not need to be adjudicated for the Bankruptcy Court to reach its determination to dismiss the First Amended Complaint.

## CONCLUSION

HTI respectfully requests that the Court affirm the dismissal of the First Amended Complaint.

DATED:      Honolulu, Hawaii, April 24, 2023.

PETTIT LAW HAWAI'I LLLC

_____/s/ Ted N. Pettit_____
TED N. PETTIT
and
MORGAN, LEWIS & BOCKIUS LLP
ANDREW J. GALLO
MELISSA Y. BOEY

Attorneys for HAWAIIAN TELCOM, INC.